Johns, Jr.
 
 Chancellor.
 

 -In this case it appears from the testimony
 
 *100
 
 that the condition of the grantor placed him under circumstances peculiarly calculated to render him subject to the fraud and imposition in which he participated. The fraud perpetrated was intended and contrived by both grantor and grantee,-to deprive the wife of alimony out of the land granted; she having instituted legal proceedings to obtain a divorce. The grantee, the present defendant, was privy and party, advising and approving, and at the same time informing the grantor, that by the conveyance to him, his wile would be thereby defeated of her claim of dower. It also appears the parties did not intend a cleat-gift or conveyance of all interests, but evidently designed to invest the grantee with the legal title, the grantor retaining the possession and the beneficial interest or control; and that he did, during his life, remain in the possession and control of the land as owner thereof, managing and using the property for his own benefit, without any interference or interruption on the part of the grantee. There can be no doubt that in this case, at the time of the execution of the deed, a fraud was intended and perpetrated. Shall the grantee be allowed, under such a deed, to enforce his claim to the fee simple interest or title in the land against the children of the grantor, who claim as heirs-at-law; when by so doing he will be allowed to take advantage of his own fraudulent act? During the life of the father, he acted not as the person having both the legal and beneficial interest, but evidently in accordance with the understanding and agreement existing, and proved by his own declarations to have subsisted between them. It was not necessary for me in a case like this, to decide as to the effect of voluntary conveyances; it is true they are only void as to creditors, for a man may give his property away and it would be bidding on him and all claiming under him. But that is not this case; the character of this transaction is very different. The defendant is relying on his right to retain that which he derived under a fraudulent grant made to him by his own advice; and the question is shall he, to the prejudice of the children, retain the title thus fraudulently acquired. It does appear to me contrary to every principle of equity, to allow such a deed to stand, or to avail the party thus lending himself not only a willing instrument, but an active and efficient agent in the fraud. It would be allowing that which had its origin and whole foundation in fraud, to acquire bv time a validity which in its inception it did not possess. The settled rule of law and equity is, that fraud taints and vitiates so thoroughly the whole transaction, that it is thereby rendered utterly void. Therefore, I was of opinion that this deed, being by the parlies at the time of its execution, con
 
 *101
 
 trived for the purpose of perpetrating a fraud, is void; and, although it might be questioned whether the grantor, who was particeps cri-minis, would be permitted to come into a court of equity for relief, as he could not come with clean hands; the same objection does not apply to those claiming under him. (2
 
 Fes. Jr.
 
 295.) The rule of equity precluding the party, I apprehend is founded on principles of public policy, and strictly personal, the main scope and design of which would be rendered more effectual by sustaining the legal and equitable title of the heirs of the deceased grantor, against the claim of the surviving grantee. For the deed being void for fraud, no title ever passed to the defendant; the decree of the chancellor, therefore, in declaring the transaction fraudulent, only ascertained and announced that which law as well as equity settles, that no legal or valid deed ever existed. The power of the court was not called into action to undo any thing, but simply to determine whether the parties, by the conveyance they attempted to make and execute, mutually intended to perpetrate a fraud; and, if so, the fraud and covin of the parties, not the decree of the court, made the instrument void. It is true, during the life of both parties, the equality in guilt may preclude either party from coming into chancery for relief, when there exists no evidence of actual imposition or fraud practiced by the grantee on the grantor; for that appearing, would afford good ground of relief to the grantor, as thereby the case would vary, and he could no longer be considered in the light of a particeps criminis, but by the advantage taken of his situation, and the imposition practiced upon him would be the person injured and defrauded. If the present case will not justify the action of a court of equity in favor of the heirs-at-law, because it does not appear that Jackson intended to defraud Dutton, although the transaction by both parties was admitted to be done, and so declared, for a fraudulent purpose, I cannot imagine a case in which, where' the grantor is particeps in the fraud, the heirs can be relieved. That the heirs should be entitled to relief upon the strong equity their claim presents, would appear reasonable and just. The reason of the rule of equity which generally excludes a particeps criminis, cannot apply to the heirs; they can come with clean hands and claim the judgment of the court, determining and declaring the fraud; nor are they as in the cases of fair voluntary conveyances, concluded by the law of estoppel. For these reasons, the decree declaring the deed .fraudulent and void was rendered, and a perpetual injunction ordered.
 

 
 *102
 

 Frame, Comegtjs
 
 and
 
 Wootten,
 
 for appellant.
 

 Ridgely,
 
 for appellees.
 

 The Court
 
 reversed
 
 the decree of the chancellor. There was no imposition or fraud practised upon Hezekiah Dutton, nor any proof of drunkenness such as would vitiate his deed. If the deed to Jackson be fraudulent, it is the fraud not merely of Peter R. Jackson, but of Hezekiah Dutton, the ancestor of complainants, who are his heirs-at-law.
 

 It is conceded that in the case of a mere voluntary deed, the grantor or his heirs could not object to it that it was fraudulent. If a mere voluntary conveyance cannot be objected to by heirs, much less shall they object to a fraudulent one. If neither the grantor nor his heirs can be relieved against a voluntary conveyance, much less can they be relieved against his fraudulent conveyance.
 

 The principle is, that it is the guilt of both parties, and neither can invoke the action of a court of equity in its aid. (1
 
 Fonbl. Eg.
 
 139-40,
 
 note.)
 
 And though this is not Hezekiah Dutton, the fraudulent grantor, asking to be relieved from his own fraud, it is the case of those who stand precisely in his stead. They can claim only
 
 his rights.
 
 If the deed conveyed away from him the title to this land at law, and so that he could not be relieved against it in equity,
 
 then there was nothing descended to his heirs at his death.
 
 They have no right or claim which he had not.
 

 It would be-very different as against
 
 creditors,
 
 or third persons not in privity with either party to the fraud.
 

 The rule of equity, that no party shall be relieved against his own fraud, is not a mere arbitrary rule, but one founded in propriety. It is to prevent frauds. It flows necessarily from the principles of equitable relief, which are purity themselves. Every man must come -with clean hands into a court of equity. A contrary rule would invite to frauds by tendering relief whenever the fraud pressed hardly.
 

 Decree reversed.